UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**ROSEMARY ELLING,**

       **Plaintiff,**

-vs-                                           Case No. 2:04-cv-495-FtM-JES-DNf

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

       **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This matter is before the Court on the Plaintiff's complaint (Doc. 1), seeking review of the final decision of the Commissioner of Social Security of the Social Security Administration (the "Commissioner") denying her claim for a period of disability, disability insurance benefits ("DIB") and Supplemental Social Security Income[1] ("SSI") pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).

The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memorandums. For the reasons set forth below, the Court recommends that the Commissioner's decision be **REVERSED** and benefits awarded.

---

[1] The disability definitions for DIB and SSI are identical, cases under one statute are persuasive as to the other. *Patterson v. Bowen*, 799 F.2d 1455, 1456 (n.1 (11th Cir. 1986); *McCruter v. Bowen*, 791 F.2d 1544, 1545 n.l2 (11th Cir. 1986).

## I. Social Security Act Eligibility,
## the ALJ Decision, and Standard of Review

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his/her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

On July 31, 1999, Plaintiff protectively filed her most recent applications for a period of Disability, Disability Insurance Benefits[2] and Supplemental Security Income (SSI). [Tr. 24]. Both claims were denied initially and upon reconsideration. A hearing was held on April 9, 2001, and a decision was issued by H. Allen Wagner, Administrative Law Judge on August 31, 2001, finding the Plaintiff not disabled. (Tr. 147-156). The Plaintiff requested review by the Appeals Council which was granted and the case was remanded by the Appeals Council to Administrative Law Judge H. Allen Wagner on August 9, 2002.

---

[2] A review of the Plaintiff's earnings record reveals that she earned sufficient quarters of coverage to remain insured only through June 30, 2000. Plaintiff must demonstrate that she was under a disability on or before that date.

On November 4, 2003, a hearing was held and the Plaintiff testified along with vocational expert, Dr. Everett Tessmer. (Tr. 24). At Step 1, the ALJ found the Plaintiff had met the disability insured status requirements on January 24, 1998; the date the Plaintiff stated she became unable to work. [Tr. 28]. At Step 2, the ALJ found that the evidence supported a finding that the Plaintiff has chronic low back pain, alcohol abuse in sustained remission after January 1, 2001, <u>only</u>, and an affective disorder. [Tr. 28] . At Step 3 the ALJ found these impairments did not meet or equal, either singly or in combination with any other impairment, any of the impairments in Appendix 1, Subpart P, Regulations No. 4, and that the Plaintiff's assertions concerning her inability to work are credible only as of January 1, 2001, but not before. [Tr. 28]. At Step 4 the ALJ determined the plaintiff was unable to perform her past relevant work as a housekeeper. The Plaintiff has 8 years of formal schooling in Germany with some training as a secretary. The ALJ determined the Plaintiff has an unskilled work background and a limited education. [Tr. 27].

By Decision dated December 17, 2003, the ALJ found: (1) That based on the application filed on July 31, 1999; the Plaintiff was not entitled to a period of disability nor to Disability Insurance Benefits under sections 216(I) and 223, of the Social Security Act. The ALJ determined that the Plaintiff's alcoholism was a factor material to the issue of "disability" within the meaning of the Social Security Act from her alleged onset date through December 31, 2000; and, (2) That based on the application filed on July 31, 1999, the Plaintiff was disabled under section 1614(a)(3)(A) of the Social Security Act, beginning January 1, 2001, but not before, and that the Plaintiff's disability continued at least through the date of the decision. (Tr. 29).

The Plaintiff sought review by the Appeals Council stating that the ALJ had: (1) "Failed to find claimant disabled under her Title II claim and; (2.) Erred in finding alcohol abuse material to her disability at the time she had Title II coverage". (Tr. 17).  The Appeals Council denied review on August 12, 2004. (Tr. 10-11). The Plaintiff timely sought review of this decision and the parties agree that the case is now ripe for review.

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II.  REVIEW OF FACTS AND CONCLUSIONS OF LAW

A. **Background Facts:**

The Plaintiff was born July 23, 1940, and was sixty-three years old at the time of the hearing. (Tr. 270). The Plaintiff testified to 8 years of education in Germany. (Tr. 25). The Plaintiff has past relevant work as a housekeeper. The Plaintiff alleges an onset date of disability of January 24, 1998; and stated she has not engaged in any substantial gainful activity since that date. (Tr. 191-194).

The Plaintiff was treated at Cape Coral Hospital on January 25, 1998, when she was admitted via the emergency room for questionable left sided weakness. The Plaintiff was seen by Dr. Ramiah Krishnan who gave a diagnosis of: "Delirium tremens, dehydration and vomiting related to alcohol abuse." The Plaintiff was released on January 29, 1998, with her medications which included Thiamine, folic acid and Librium. (Tr. 253-269).

The Plaintiff was seen at Family Health Centers of Southwest Florida, Inc., from February 14, 1998, through August 24, 1999, for episodic care. The Plaintiff was treated by Frances Robine, ARNP. The patient's notes reveal that she was seen for hypertension, anxiety, and alcohol abuse. The Plaintiff was treated with Norvasc, Zoloft, Folic Acid, and Calcium and she was advised to seek assistance at the Ruth Cooper Center for her alcohol problems. (Tr. 270-279).

The Plaintiff was referred to Ruth Cooper Center for a psychiatric series because of her history of depression. The Plaintiff was then admitted to the out patient program for multiple stressors consisting of a history of depression, crying, family and financial problems. (Tr. 350).

5

The Plaintiff was treated at the Center from May 14, 1998, through July 19, 1999. (Tr. 270-279). The Plaintiff was scheduled to meet with Dr. Catherine Larned, M.D., a psychiatrist, and Gerard Sprague, M.S., mental health counselor, at least twice a month.

On July 19, 1999, Mr. Sprague's notes reflect that: "Plaintiff has a strong genetic predisposition towards depression/suicide (paternal grandmother, Aunt, F (sic) also her son) compounded by miserable marriage of 28 years .............." "Husband is abusive in every way ...... controls her financial, neglects her, won't speak to her. Threw her out of the bedroom months ago."

On September 9, 1999, the Plaintiff was again seen by Dr. Lamed, M.D.. The Plaintiff's chief complaints were, "I don't sleep," and "I'm depressed.". Dr. Larned noted that the Plaintiff's husband was abusive to the Plaintiff and their "brain damaged" son. (Tr. 361). The Plaintiff acknowledged to the doctor that she only drank a couple of glasses of wine to be able to sleep. (Tr. 360). A mental status examination completed by Dr. Lamed revealed the Plaintiff was casually dressed and cooperative. Her motor behavior appeared to be hyperactive and the Plaintiff interrupted when Dr. Lamed was speaking. The Plaintiff's mood was depressed and anxious. The psychiatric evaluation states: DIAGNOSTIC IMPRESSION: AXIS I.[3] (1) Rule out

---

[3] Axis I is for reporting all the various disorders or conditions except for the Personality Disorders and Mental Retardation which are reported under Axis II. The diagnostic criteria for adjustment disorder includes the development of emotional or behavioral symptoms in response to an identifiable stressor occurring within three months of the onset of the stressor, these symptoms are clinically significant as evidenced by marked distress that is in excess of what would be expected from exposure to the stressor, or significant impairment in social or occupational function, the stress-related disorder is not merely an exacerbation of a pre-existing Axis I or Axis II, and once the stressor has terminated, the symptoms do not persist for more than an additional six months.

bipolar disorder. (2) Major depression recurrent. (3) Alcohol dependence, active. (4) Victim of domestic violence. AXIS II. Dependent personality disorder. AXIS III..[4] Hypertension. AXIS IV.[5] Severe. AXIS V. [6] Global Assessment of Functioning ("GAF") was 50. TREATMENT PLAN: The Plaintiff was started on Prozac and Trazodone. Notes: "I really do think she may actually need an anti- psychotic medication but I will see how she responds to these medications first." (Tr. 360).

On October 20, 1999, Carol Deatruk, Ph.D., reviewed Plaintiff's medical records and completed a psychiatric review technique form. (Tr. 305-313). Dr. Deatruk did not find Plaintiff's mental condition disabling. She found Plaintiff to be depressed . However, she also found the depression to be part of the abuse she takes from her husband. The doctor noted that the Plaintiff: "Cooks, shops, cleans, does laundry, able to get along with people". (Tr. 314, 315).

On January 1, 2001, the Plaintiff was taken to Lee Memorial Hospital after she burned her house down because she was mad at her husband. At the hospital, the Plaintiff was placed under the Baker Act, transported and admitted to the Crisis Stabilization Unit at the Ruth Cooper

---

[4] Axis III is for reporting general medical conditions that are potentially relevant to the understanding or management of the individual's mental disorder.

[5] Axis IV is for reporting psychosocial and environmental problems that may affect the diagnosis, treatment, and prognosis of mental disorders (Axis I and Axis II). The Axis IV categories include: problems with primary support group; problems related to the social environment; educational problems; occupational problems; housing problems; economic problems; problems with access to health care services; problems related to interaction with the legal system/crime.

[6] Axis V is for reporting the clinician's judgment of an individual's overall level of functioning. Reporting is done using the Global Assessment of Functioning (GAF) Scale using a score rating from one to one hundred.

Center. The Plaintiff was placed on an alcohol detox protocol and visual observation as well as Norvasc for her high blood pressure. The Plaintiff was seen for a psychiatric evaluation. Gayle Kesselman, M.D., diagnosed: AXIS I. (1). Major depressive disorder, single episode, severe without psychotic features. (2). Alcohol dependence. AXIS II. None. AXIS III. Hypertension, AXIS IV. Moderate - marital problems, problems with son . AXIS V. GAF = on discharge 50, past year 60. The Plaintiff was released to the Lee County Jail where she became a patient of EMSA Correctional Care.

From January 4, 2001 through February 24, 2001, Plaintiff remained a patient at EMSA. S. Ramirez, M.D., was the Plaintiff's treating physician. The Plaintiff was diagnosed with hypertension, history of alcohol abuse and depression. Dr. Ramirez recommended follow-up with a psychiatrist and on June 24, 2003, the Plaintiff was seen by John F. Prater, D.O. , P.A., Psychiatry. (Tr. 344-346).

On June 24, 2003, Dr. Prater advised the Disability Determinations Office by letter that he "diagnosed the patient as having multiple difficulties. They include likely recurrent affective disease, which could be either bipolar II or recurrent severe depression. She also has post traumatic stress disorder and chronic alcoholism, currently in remission. In addition, on Axis II she has dependent and masochistic features. Axis III revealed hypertension, status post surgeries. Axis IV was severe with marital and financial stress. Axis V was 52." Dr. Prater found after reviewing the Plaintiff's records and interviewing her clinically the following: "this is an individual who has chronic, severe and incapacitating psychiatric illness. Some of it is being under treated, although I suspect none of it could be treated to the extent that she would be employable in the

work place. The chronicity of her social problems as well as her psychiatric problems and her language barrier, would make it very difficult for her to be gainfully employed. Therefore, I would concur that she is totally disabled and would be qualified to receive benefits to that extent." (Tr. 391-392).

On July 24, 2003, ALJ Wagner sent a letter to Larry Benovitz, M.D., to request his assistance in completing interrogatories and a Medical Assessment of Ability to do Work Related Activities Form concerning the Plaintiff. (Tr. 393-394). Dr. Benovitz is a medical expert and psychiatrist. Dr. Benovitz never interviewed or examined the Plaintiff. (Tr. 393). After a review of all the evidence in the record, Dr. Benovitz wrote the following: "In my opinion, based on the record in total, her psychiatric impairments would have prevented sustained employment as of 1/01 since before that date she was an active alcohol abuser which was a material & substantial part of her overall illness. The date of 1/01 assumes (sic)she has been sober since then." (Tr. 401).

Thus, the ALJ determined that from January 24, 1998 through December 31, 2000, the Plaintiff was unable to engage in any substantial gainful activity due to the combination of her non-exertional impairments and alcoholism. (Tr. 28). The ALJ also found that as of January 1, 2001, but not before, the Plaintiff's substance abuse disorder was not a material factor to the finding of disability. (Tr. 29).

**B.   Specific Issues**

**The ALJ Erred by Improperly Determining that Alcohol was a contributing Factor Material to Plaintiff's Disability**

The Plaintiff contends that the ALJ erred when he determined that the Plaintiff was unable to engage in substantial gainful activity because alcoholism (which resulted in her depression) was a factor material to the issue of disability from January 24, 1998, her alleged onset date through December 31, 2000. [Tr. 29]. Therefore, the ALJ found that January 24, 1998, through December 31, 2000, the Plaintiff was not under a disability as defined in the Social Security Act.

1.   **<u>Drug Addiction and Alcoholism</u>**

If a claimant is disabled, but has evidence of drug addiction or alcoholism, the ALJ must determine whether the drug addiction or alcoholism is a contributing factor material to the determination of the finding of disability.[7] 20 C.F.R. § 404.1535 (a). In making this determination, the ALJ considers whether the claimant is disabled without the drug addiction or alcoholism. 20 C.F.R. § 404.1535 (b)(1). The ALJ considers which of the disabling conditions would remain should the claimant stop using drugs or alcohol. 20 C.F.R. § 404.1535 (b)(2). If the ALJ determines that the claimant's remaining limitations would not be disabling, the ALJ will find that the drug usage or alcoholism is a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535 (b)(2)(i). Drugs and alcohol are a contributing factor material to the determination of disability when they form the exclusive basis for the finding of disability.

---

[7] The Social Security Act was amended in 1996 to direct the Commissioner to terminate or deny benefits to individuals for whom alcoholism is a contributing factor material to a finding of disability. Public Law No. 104-121, 110 Stat. 8427 (1996) (the "Amendments") was enacted on March 29, 1996. Section 105 of Public Law No. 104-121 amended certain provisions of the Social Security Act that would serve to deny a claimant's claim where there is a finding that alcoholism or drug abuse plays a contributing factor material to the Commissioner's finding that the claimant is disabled. The Amendments apply to all applications which were not finally adjudicated prior to March 29, 1966. Pub. L. No. 104-121 § 105(a)(1), 42 U.S.C. § 405 note.

If there are other grounds for finding the claimant disabled, then drugs and alcohol are not a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535 (b)(2)(ii). A claimant's use of drugs or alcohol does not necessarily disqualify him from receiving disability if the claimant has other disabling conditions.

If the Commissioner determines that a claimant is disabled and drug addiction or alcoholism is a contributing factor material to the determination of disability, the claimant must avail himself of appropriate treatment for the addiction, and make progress in this treatment. 20 CFR § 404.1536 (a). A claimant will not receive benefits if he does not comply with the treatment requirements. 20 CFR § 404.1536 (a)(1) and (2).

### III. CONCLUSION

In the instant case, the Plaintiff did stop using alcohol [January 2, 2001], and yet all of her disabling conditions still remained. The Plaintiff was diagnosed as a victim of domestic violence along with major depression. (Exhibit 13F). The Plaintiff suffered from severe depressive symptoms from living with a spouse that is abusive and neglectful of her. (Exhibit 4F). The Plaintiff had a GAF (Global Assessment of Functioning score of 50 which indicates an impairment in social, occupational or school functioning).

Dr. Benovitz' assessment found the Plaintiff had "impaired and disturbed interpersonal relationships [with her husband and son]" and rated her "poor" on abilities related to making any occupational adjustments or personal/social adjustments. Furthermore, Dr. Benovitz stated that due to her history of substance abuse, age and difficult marriage, the Plaintiff's improvement through treatment would be "modest at best." Dr. Benovitz concluded his assessment by stating that the Plaintiff's "psychiatric impairments would have prevented substantial employment as of

11

January 2001 since before that date she was an active alcohol abuser which was a material and substantial part of her overall illness." Dr. Benovitz contradicted himself when he stated both - that alcohol was a contributing material factor **prior** to January 1, 2001; and that the Plaintiff was still unable to engage in substantial activity **after** she stopped drinking on January 1, 2001. [Tr. 409]. The evidence substantiates that Plaintiff's debilitating mental impairment did not improve after she stopped drinking alcohol. Therefore, her use of alcohol was not material to her disability.

Dr. Prater determined the Plaintiff had multiple problems which had existed for a long period of time. The Plaintiff was severely depressed, tearful, with a fluctuating appetite, anhedonia and anxiety. The family history was significant for depression as the Plaintiff's father, grandmother and aunt had committed suicide (and the patient herself has had active suicidal thinking). Dr. Prater stated that the Plaintiff : "is an individual who has chronic, severe and incapacitating psychiatric illness...social problems, psychiatric problems and a language barrier that would make it very difficult to be gainfully employed".

The ALJ stated in his findings that from the onset date of January 24, 1998, through December 31, 2000, the Plaintiff's alcoholism had a reduced residual functional capacity that prevented her from performing work at any exertional level on a sustained basis. Thus, if the Plaintiff is found to have disabling impairments both before and after she stopped using alcohol, the ALJ must find that alcohol use was not a material factor contributing to the determination of disability. C.F.R. 20 §404.1535(b)(2)(ii), 20 C.F.R. § 416.935(b)(2).

## IV.  RECOMMENDATION

For the reasons stated above, it is recommended that the decision of the Commissioner be **REVERSED and benefits awarded.**  Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 6.02 within ten days of the date of its filing shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

**DONE AND ORDERED** in Chambers, Fort Myers, Florida, this   10th   day of  January, 2006.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Deliver Copies of this Order to:

All Counsel of Record/*Pro Se* Litigants

13